501 So.2d 1020 (1987)
Willy CLEMONS, Plaintiff-Appellant,
v.
Cecil J. BLACHE, Administrator of the Louisiana Office of Employment Security, et al., Defendant-Appellee.
No. 18360-CA.
Court of Appeal of Louisiana, Second Circuit.
January 21, 1987.
*1021 Culpepper, Teat, Caldwell & Avery by James D. Caldwell, Jonesboro, for plaintiff-appellant.
Office of Employment Security by Brank T. Scott, Jr., Baton Rouge, for defendant-appellee.
Before HALL, SEXTON and LINDSAY, JJ.
LINDSAY, Judge.
The plaintiff, Willy Clemons, was denied unemployment compensation benefits by the Board of Review of the Louisiana Department of Employment Security based on a finding that plaintiff had left his employment with Ruston Industrial Supply without good cause. The plaintiff appealed that decision to the Third Judicial District Court which affirmed the finding of the Board of Review. Plaintiff then appealed to this court. We affirm the findings below, holding that plaintiff is not entitled to receive unemployment compensation benefits.
The plaintiff worked for Ruston Industrial Supply for approximately five years as a truck driver. His duties included delivering supplies to the company's customers. On June 3, 1983, when plaintiff reported to work, a pickup truck was being loaded for delivery. Included in the order were two steel augers approximately ten and one-half feet long. The bed of the pickup truck was approximately eight to nine feet long. The augers were placed in the bed of the pickup truck with one end against the back of the cab and the other extending over the closed tailgate of the truck. The augers were secured to the bed of the truck by being tied to the truck's bumper. The plaintiff stated that he did not want to *1022 deliver the load in the pickup truck, expressing doubt as to the safety of hauling the augers. Plaintiff preferred to place the augers and other supplies on a larger, one ton flatbed truck with slatted sides. The plaintiff told his foreman, Durwood Matlock, that he would not deliver the supplies on the pickup truck. Matlock informed the plaintiff that he had to use the truck which had been assigned to him. The plaintiff then told the foreman that he was quitting his job as he did not have to work there. The supplies were delivered without incident by Kenny Kennedy, the warehouse man at the company.
Plaintiff applied for unemployment compensation benefits which were denied June 30, 1983. Notice was mailed to the plaintiff informing him of the denial and informing him that his appeal rights would expire on July 15, 1983. Plaintiff appealed this ruling on July 25, 1983, but the appeal was denied as being untimely. Plaintiff then sought relief in the Third Judicial District Court. That court ordered that plaintiff be granted an appeal.
Following the court order, plaintiff's appeal was presented to the appeals referee for hearing on the merits. The appeals referee determined that the plaintiff refused to deliver merchandise to the company's customers in the truck which had been properly assigned. The referee found that the request was not unusual nor outside the plaintiff's regular assigned duties, that plaintiff left his employment because he disliked the assigned work, and that plaintiff left his employment without good cause connected with the employment. The decision was upheld by the Board of Review.
The plaintiff then appealed this finding to the Third Judicial District Court. That court affirmed the decisions of the appeals referee and the Board of Review. In written reasons for judgment, the court concluded that plaintiff refused to carry out the task assigned to him and noted that the plaintiff produced no evidence at the hearing to corroborate his own testimony that the task required of him was dangerous. The court was satisfied that the employer acted properly in directing plaintiff to deliver the augers in the pickup truck. The court held that plaintiff failed to show that he left his employment for good cause.
The plaintiff has now appealed to this court, claiming the district court erred in finding that plaintiff left his employment, rather than being "constructively discharged." Plaintiff also contends that the district court erred in finding that plaintiff left his employment without good cause.
Our review of this case is limited by LSA-R.S. 23:1634 which provides in pertinent part:
In any proceeding under this Section the findings of the board of review as to the facts, if supported by sufficient evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law.
Therefore, the issue in this case is whether the district court reached the correct legal conclusion in finding that plaintiff left his employment without good cause connected with the employment. R.S. 23:1601(1) provides, in part:
An individual shall be disqualified for benefits:
(1) If the administrator finds that [the individual] has left his employment ... without good cause connected with his employment....
The first step in our inquiry is a determination of whether plaintiff voluntarily left his employment, or was forced to resign. If plaintiff voluntarily left his employment, he must show that he left with good cause connected with his employment in order to receive benefits. However, if plaintiff showed that he was forced to resign or was "constructively discharged," the employer would then have the burden of showing that plaintiff was discharged for misconduct which would disqualify him from receiving unemployment compensation benefits. Here, plaintiff has failed to show that he was "constructively discharged."
*1023 The evidence adduced at the hearing supports the conclusion that plaintiff voluntarily resigned his position. The record shows that plaintiff simply refused to deliver supplies on the assigned pickup truck, and that he voluntarily chose to resign when his superiors denied him the use of the larger truck. There is no evidence in the record supporting the conclusion that the plaintiff was in any way encouraged, coerced, or forced to resign. There is also no showing in the record that plaintiff asked to be assigned to other duties that day instead of driving the truck. The record supports the conclusion that the plaintiff decided to leave his employment of his own accord.
The next step in the inquiry is to determine whether the plaintiff left his employment for good cause connected with the employment. LSA-R.S. 23:1601 provides that an individual is disqualified from receiving unemployment compensation benefits if he has left his employment without good cause connected with the employment. Good cause has been defined as more than mere dissatisfaction with the working conditions. Joubert v. Blache, 488 So.2d 749 (La.App. 3rd Cir.1986); Nason v. Louisiana Department of Employment Security, 475 So.2d 85 (La.App. 2d Cir.1985), writ denied 478 So.2d 149 (La. 1985). The good cause contemplated by the statute must be from a cause that would reasonably motivate, in a similar situation, the average able bodied and qualified worker to give up his or her employment. Neal v. Administrator, Division of Employment Security, Department of Labor, 197 So.2d 393 (La.App. 2d Cir.1967). The standard of what constitutes good cause is the standard of reasonableness as applied to the average man or woman and not the supersensitive. Southern Hardware and Lumber Company v. Department of Employment Security, 250 So.2d 780 (La.App. 4th Cir.1971). Good cause connected with employment means a cause connected with working conditions, ability of the employee to continue employment, availability of transportation to and from work and other factors which affect the employee's ability or right to continue work or which affect the benefits he may receive from his employer either upon continuation of the work or on retirement. Louisiana Department of Corrections v. Administrator, Louisiana Office of Employment Security, 457 So.2d 825 (La.App. 1st Cir. 1984); McGraw v. Director of Postal Data Center, 319 So.2d 797 (La.App. 1st Cir. 1975).
Under these definitions of good cause, certain circumstances may exist where an employer's request that an employee perform hazardous or potentially dangerous tasks not normally included in the course of employment would constitute good cause for leaving the employment. However, as the district court held, the plaintiff in this case has failed to establish that the task of hauling these two augers in a pickup truck was unreasonably dangerous or that this task was outside the normal scope of his duties.
Plaintiff testified that the augers were twenty-two feet in length and that there was no way to tie the augers to the truck in order to secure them during the journey. Testimony from the employers' witnesses established that the augers were only ten and a half feet in length, slightly longer than the bed of the pickup truck, and that the augers were secured by being tied with a length of rope to the bumper of the truck. The employers' witnesses also testified that the spiral design of the augers made it extremely unlikely that they would slip off the truck in transit. These witnesses also testified that delivering the augers in the pickup truck was safer than delivering them in the larger flatbed truck.[1]
There is nothing in the record to indicate that plaintiff did not normally haul such *1024 loads. Evaluated under the reasonableness standard, plaintiff has failed to demonstrate any danger posed by his assigned tasks. Rather, the record indicates a dissatisfaction with working conditions and an unwillingness by the plaintiff to carry out the tasks assigned.
For the above stated reasons, we affirm the decision of The Third Judicial District Court which upheld the finding by the Board of Review that plaintiff left his employment without good cause connected with his employment. Plaintiff is therefore ineligible to receive unemployment compensation benefits.
AFFIRMED.
NOTES
[1] We note that the augers extended beyond the tailgate of the pickup truck only two feet and a red marking device was affixed to the end of the load. This extension was within the standards set by LSA-R.S. 32:382(B)(1) which provides that a load upon the rear of the vehicle shall not extend more than eight feet beyond the rear of the bed or body of said vehicle.