612 So.2d 126 (1992)
Joseph CHURCH
v.
NEW ORLEANS AVIATION BOARD.
No. 91-CA-1897.
Court of Appeal of Louisiana, Fourth Circuit.
October 29, 1992.
On Rehearing December 29, 1992.
Writ Denied March 19, 1993.
*127 Peter D. Derbes, and Frank A. Silvestri, Silvestri & Massicot, New Orleans, for appellant.
Bernard L. Charbonnet, Jr., Law Office of Bernard L. Charbonnet, Jr., New Orleans, for appellee.
Before SCHOTT, C.J., and ARMSTRONG and BYRNES, JJ.
ARMSTRONG, Judge.
Appellant, Joseph Church, appeals a decision of the New Orleans Civil Service Commission upholding his dismissal from his employment with the New Orleans Aviation Board. We affirm the Commission's ruling.
Church began his employment with the Aviation board in 1986 as a welder at the New Orleans International Airport. He resigned in 1987 and was rehired as a permanent welder on March 5, 1989. Church had been promoted to probationary senior welder when he was dismissed on August 16, 1989 for misrepresenting his reasons for requesting a leave of absence and for failing to return to work when ordered. He appealed his dismissal to the Civil Service Commission contending that there was no just cause for his termination and that the facts alleged against him were untrue.
The case was tried before a Hearing Examiner and the transcript was reviewed by three Commissioners. The Aviation Board called four witnesses, Gerald McKinney, Airport Manager; Henry Micas, Maintenance Supervisor; Patricia Malone, Assistant Director of Administration; and David L. Blackshear, Director of the Aviation Board. Church himself was his only witness.
Testimony presented at the hearing revealed the following. On April 27, 1989 Church prepared a memo to the Director of Aviation in which he submitted a written request for an extended leave of absence for personal business. In the memo he also stated that John Haas, his immediate supervisor, had approved a two week leave of absence but had no authority to approve beyond that length of time. When Church attempted to submit his leave request, the Aviation Director was not in his office. Upon leaving the office, Church encountered McKinney. He asked McKinney for a leave of absence without pay. McKinney testified Church told him that he needed leave to care for his sick wife who was bedridden during the final two months of her pregnancy.
On May 4, 1989, McKinney issued to Haas an interoffice memo informing him that he had approved Church's leave from May 8, 1989 to July 8, 1989. McKinney also stated that "Church is reminded to keep the office informed of any changes that may occur while on his leave." Church's co-workers and most of his supervisors were aware of his wife's condition and her doctor's orders for bed rest.
On May 9th, McKinney stated that three staff persons approached him indicating *128 they heard rumors that Church was working in Alaska while he was on leave making large amounts of money. On May 12th, McKinney directed his secretary to telephone Church's home in an effort to verify the rumors. On that same day McKinney directed a second memo to Haas. The subject was verification for Church's leave of absence.
On May 18th, McKinney sent a letter to Church informing him he had heard rumors around the airport that he was working in Alaska while on leave. McKinney reminded him that approval of his leave request had been based upon his representation that leave was necessary to attend his sick wife. In that same letter McKinney directed Church to attend a meeting on June 1, 1989 and "verify that he was indeed attending his wife." Church failed to appear. Instead, he had his attorney write a letter advising that he was unable to attend, but that he would return to work pursuant to the conditions of his leave.
On June 5, 1989, McKinney sent another letter to Church notifying him that his leave had been cancelled. In that letter McKinney also ordered Church to return to work within three days and warned him that "failure to report for duty shall be deemed as job abandonment and termination proceedings will be initiated." On June 29th, which was three weeks after the date he was ordered to report, Church returned to work. On June 30th McKinney instituted pre-termination proceedings against him.
Following three administrative hearings, the Termination Committee recommended that Church's employment be terminated. Malone testified that she participated in the hearings and concurred with the committee's decision. McKinney testified that he discussed the results of the hearings with Blackshear and recommended to him that Church be dismissed. Blackshear testified that he approved McKinney's recommendations. He further stated that he would have denied Church's leave request to work another job. On August 16, 1989, McKinney issued a letter of termination to Church notifying him of his dismissal for misrepresenting his leave request and for failing to return to work after his leave had been cancelled.
In his testimony before the examiner, Church disputed McKinney's testimony claiming that he did not tell McKinney he needed leave to take care of his wife. Church stated that he requested leave for personal business and did not discuss the nature of his personal business with McKinney. Church testified that he told his immediate supervisors, Henry Micas and John Haas, he was seeking approval of an extended leave of absence to work in Alaska. Church stated that following his conversation with McKinney he left for Alaska early the next morning. The stub from his first Alaska paycheck reflects that Church was working the Exxon-Valdez clean-up by April 28th. Church admitted that even though he knew Airport Management had telephoned his home and sent him certified letters concerning his leave status he did not personally respond to their inquiries because they were directed to his wife, thus "he had no business to deal with them."
After review of the proceedings held before the hearing examiner, the Commission upheld Church's dismissal. The Commission concluded that just cause existed for his termination, the facts alleged against him were true and the standard of proof required under Johnson v. Dept. of Police, 575 So.2d 440 (La.App. 4th Cir.1991) was satisfied.
In its reasons for judgment the Commission stated:
[T]he record strongly suggests that the Appellant was and is attempting to manipulate certain ambiguities in the paper work involved in granting his leave, as well as the normal procedures for communication with supervisors. His bold and often ambiguous testimony, including his bare and unsupported assertions that all the other witnesses were lying, is not credible. Frequently, his testimony vacillates and in some cases is plainly not reasonable. This record shows that the Appellant was not conducting himself with candor with the Appointing Authority *129 regarding pertinent issues, and that he just did not feel compelled to respond to the inquiries by the Appointing Authority. His refusal to ever directly inform the Appointing Authority of his travel to Alaska confirms this.
On appeal, Church asserts six assignments of error.
By his first assignment of error, Church contends that the Commission erred in upholding his dismissal because it was procedurally defective. Specifically, Church argues that the Aviation Board failed to ratify his termination within sixty days pursuant to Section 9-103 of the Home Rule Charter of the City of New Orleans, rendering his dismissal null and void.[1] We disagree.
Section 9-103 of the Home Rule Charter does not control Church's dismissal. Rather, termination from service is governed by the Rules of the Civil Service Commission. The Home Rule Charter designates the Aviation Board as an unattached board. As such, the Aviation Board has both appointed and civil service employees. The Board's employees in the City Civil Service are under the authority of the Civil Service Commission. LSA-Const. art. X, § 1(B)[2]. Cf. Sewerage & Water Bd. of New Orleans v. Civil Serv. Com'n of City of New Orleans, 496 So.2d 1019 (La.1986). Consequently, the rules of the Civil Service Commission are applied to all Aviation Board employees except the Aviation Director, the Board's members and the Board's appointed employees. Ford v. New Orleans Sewerage and Water Bd., 594 So.2d 1088 (La.App. 4th Cir.1992).
Church, a classified civil servant, was discharged for violating a rule of the Civil Service Commission. It is, therefore, inconsequential that the record does not contain evidence showing the Aviation Board ratified Church's termination from service.
By his second assignment of error, Church contends that he was dismissed by McKinney, a person who he claims was without legal authority to dismiss him. Church also contends that his dismissal was unlawful because his termination letter had not been signed by the Aviation Director (Blackshear).
Church's letter of termination explained that he was discharged for violating Rule IX, § 1.1 of the Rules of the Civil Service Commission. That rule, which is entitled "Maintaining Standards of Service," provides as follows:
When an employee in the classified service is unable or unwilling to perform the duties of his/her position in a satisfactory manner, or has committed any act to the prejudice of the service, or has omitted to perform any act it was his/her duty to perform, or otherwise has become subject to corrective action, the appointing authority shall take the action warranted by the circumstances to maintain the standards of effective service. The action may include one or more of the following:
a) termination from service ... (emphasis added)
"Appointing Authority" is defined by Rule 1.4 as "any officer, board, agency, commission, or person having the power to make appointments to the positions in the city service." The unrebutted testimony at the commission hearing establishes that, at the time pertinent to Church's dismissal, McKinney was the appointing authority for the airport. Based upon his status as appointing *130 authority, McKinney had the authority to terminate Church from service.
Furthermore, Blackshear testified that he conferred his prior approval to both the pre-termination proceedings and Church's dismissal. Therefore, even if McKinney had not possessed authority to terminate Church's employment because the duty belonged solely to Blackshear, Blackshear testified he pre-approved Church's termination. Consequently, as Rule IX, § 1.3 only requires that "[i]n every case of termination... the Appointing Authority shall furnish the employee and the Director of Personnel a statement in writing of the reasons therefore," it is simply not pertinent that the termination letter was signed by McKinney instead of Blackshear. Montgomery v. Municipal Empl. Civ. Serv. Bd. of Rayne, 248 So.2d 621 (La.App. 3d Cir.1971).
By his third assignment of error, Church claims that the Appointing Authority failed to prove by a preponderance of the evidence that there were sufficient grounds for his dismissal.
Under the facts of this case, we find nothing arbitrary or capricious or manifestly wrong in the Commission finding that Church misrepresented his leave request and failed to return to work when ordered. McKinny's testimony was corroborated by Malone. She testified that leaves of absence of a significant length are brought to her attention and she was aware Church had been granted a two month humanitarian leave, i.e., to care for his bedridden wife during the final months of her pregnancy. Malone stated that she had also heard rumors about Church going to Alaska to work. Consequently, when she and Church inadvertently met in the hall, she mentioned his two month leave, indicating that she was sorry he would be leaving for awhile. In response to her comments, Church volunteered the story about his ailing wife, never mentioning Alaska.
McKinny's testimony was also corroborated by Blackshear. He testified that it was unusual for Church to direct his leave request to him. Consequently, he deferred the request to McKinney who informed him that he had already granted Church a humanitarian leave of absence so he could care for his bedridden wife.
The Commission, unlike a trial court, has no advantage over this court in evaluating the credibility of witnesses when testimony is taken before a hearing examiner and filed with the Commission without comment or recommendation by the examiner as was done in this case. Under such circumstances, we need not defer to the Commission's determination of credibility. Bosarge v. New Orleans Streets Dept., 459 So.2d 693 (La.App. 4th Cir.1984); Merchant v. Department of Finance, 391 So.2d 587 (La.App. 4th Cir.1980). We believe the the record shows that Church's credibility was seriously damaged by his own vague and ambiguous testimony. On direct examination by his counsel, Church testified that at no time did he speak about his wife during his conversation with McKinney. However, later in his testimony he stated "If I did (discuss his wife) I don't recall. Like I said, If we spoke it was brief." We note that Church was able to recall without hesitation other alleged parts of that conversation he claims to have had with McKinney. McKinney however, stated that the only discussion between he and Church concerned the leave request.
The record also shows that Church's credibility was damaged by his inability to produce a witness who could corroborate his testimony. Church testified it was well known that other employees had been given leave to work on other jobs. However he failed to produce a witness or offer any evidence which would support that allegation.
Although Church contends he informed Micas and Haas that he was seeking leave to take a job in Alaska, the record shows these two supervisors did not have authority to approve a two-month leave of absence for any reason. Testimony indicated that McKinney, who was responsible for 140 employees and for the day-to-day operations and maintenance of the airport, had that authority.
The record also shows that Church refused to answer airport management communications *131 concerning his leave status and failed to report to work as ordered after his leave had been terminated. In his testimony Church admitted that he was in daily contact with his wife while he was in Alaska. He stated that his wife informed him of the letters and calls she received from Airport Management. Church's argument that these office inquiries were directed to his wife and as such he was not required to respond is without merit. He acknowledged he did not inform McKinney or the Aviation Director of his plans to work in Alaska.
By his fourth assignment of error, Church contends that the Aviation Board failed to clearly establish his alleged improper conduct bore a real and substantial relationship to the efficient operation of the public service and the conduct impaired the Aviation Board's orderly and efficient operation. We disagree.
We find that the Aviation Board has proved a legal cause for dismissal, that is, Church's improper conduct bore a real relationship to and actually impaired its orderly and efficient operation. The evidence showed that Church was working a job in Alaska while on leave and he refused to communicate with the Appointing Authority in spite of its repeated attempts to ascertain the truth of the rumors circulating on the matter.
Malone testified that, as a supervisor, Church had the added duty of upholding rules and regulations of the Aviation Board and insuring they were fairly followed. The record revealed that Church was a welding supervisor responsible for three employees. Malone also stated that under the rules and regulations of the Board, Church had misused his leave and thus, had demonstrated an unwillingness to comply with Rule IX.I.I of the Rules of the Civil Service Commission. McKinney testified that Church's actions caused morale problems at the airport concerning pending leave requests by other employees. This evidence substantiates the commission's conclusion that Church's conduct was prejudicial to the Aviation Board's efficient operation. Consequently, its ruling is not arbitrary, capricious or characterized by an abuse of discretion, and cannot be disturbed on appeal.
By his fifth assignment of error, Church contends that the Aviation Board failed to prove that he abandoned his employment. Church argues that the abandonment issue became moot when he returned to work on June 27, 1989. We disagree. Church's improper conduct of job abandonment transpired when, without an acceptable reason, he failed to return to work on June 8th as ordered. His improper conduct was not absolved by his reappearance three weeks later. Thus, this issue is not moot.
By his final assignment of error, Church contends that his termination is not commensurate with the alleged wrongful conduct. We disagree.
Legal cause for a disciplinary action against a permanent classified employee exists whenever the employee's conduct is detrimental to the efficient operation of the public service for which the employee is employed. Abadie v. Dept. of Streets, 480 So.2d 425 (La.App. 4th Cir.1985), writ den., 481 So.2d 1351 (La.1986). The Commission found that Church's termination from service was appropriate based upon the complained of activities, combined with his lack of candor and manipulative and evasive actions. As this reasoning validates that Church's punishment is commensurate with the wrongful conduct, the Commission's order is not arbitrary, capricious or characterized by an abuse of discretion. Therefore, it cannot be disturbed on appeal. Alford v. Sewerage and Water Bd. of New Orleans, 562 So.2d 1167 (La.App. 4th Cir. 1990).
For the foregoing reasons the Commission ruling is affirmed.
AFFIRMED.
SCHOTT, C.J., dissents in part with reasons.
SCHOTT, Chief Judge, dissenting in part:
Although the appointing authority carried his burden of proving misconduct on *132 appellant's part, his dismissal from the civil service is not supported by the record. The appointing authority had the burden of proving that appellant's misconduct impaired the efficiency of the public service and bore a real and substantial relationship to the efficient operation of the public service in which the employee was engaged. Hatzgionidis v. Department of Police, 580 So.2d 471, 473 (La.App. 4th Cir.1991). The record shows that others were permitted leaves to pursue other employment, it fails to support the appointing authority's thesis that morale among co-workers was adversely affected, and it offers no support for the proposition that appellant's absence had any adverse effect on the efficiency of his department. In fact, one could infer that appellant's leave without pay saved money for the taxpayers without sacrificing any productivity or efficiency for the appointing authority.
Before SCHOTT, C.J., and BYRNES and ARMSTRONG, JJ.

ON APPLICATION FOR REHEARING
ARMSTRONG, Judge.
Rehearing is granted on application of appellant.
Neither Section 9-103 nor Section 4-108 of the Home Rule Charter controls the administrative procedure for appellant's dismissal. As stated in our original decree, appellant's termination from service is governed by the Rules of the Civil Service Commission.
At the time of his dismissal, appellant was a classified civil servant. He was discharged for violating Rule IX § 1.1 of the Rules of the Civil Service Commission. It is, therefore, inconsequential that the record does not contain evidence showing the Aviation Board ratified appellant's termination from service within sixty days of his dismissal to allegedly conform to provisions of the Home Rule Charter.
The unrebutted evidence established that, at all time pertinent to appellant's discharge, McKinney was the Appointing Authority for the airport. Based upon his status as Appointing Authority, McKinney had the authority to terminate appellant's employment. The record reflects that, the Director of Aviation, Blackshear, approved both the pre-termination hearings and the termination of appellant's employment. Consequently, even if McKinney had not possessed the authority to terminate appellant's employment, Blackshear testified that he approved appellant's dismissal. The termination of employment letter written by McKinney and preapproved by Blackshear, therefore, satisfies Rule IX § 1.3 of the Rules of the Civil Service Commission as it was written by the Appointing Authority and/or under the Appointing Authority's Direction. See Montgomery v. Municipal Empl. Civ. Serv. Bd. of Rayne, 248 So.2d 621 (La.App. 3d Cir.1971).
Accordingly, our original decree is affirmed.
SCHOTT, C.J., dissents and assigns reason.
SCHOTT, Chief Judge, dissenting:
I reiterate my original position that the record does not support appellant's dismissal from the civil service.
NOTES
[1] Section 9-103 provides: "[b]oards may delegate powers of appointment, determination of compensation, discipline or removal of their executive officers, provided that all personnel actions shall be reported promptly to the board and such actions shall become null unless approved by the board within sixty days of the date of the action."
[2] LSA-Const. art. X, § 1(B) provides: "The city civil service is established and includes all persons holding offices and positions of trusts or employment in the employ of each city having over four hundred thousand population and in every instrumentality thereof." (emphasis added) One of the instrumentalities of the City of New Orleans is the Aviation Board. The Home Rule Charter refers to it as an "unattached" board of the City. Cf. Sewerage & Water Bd. of New Orleans v. Civil Serv. Com'n of City of New Orleans, supra.