11PLOTKIN, Judge.
In this civil service disciplinary case, Anne Bannister (“appellant”) appeals the decision of the Civil Service Commission (“the Commission”) that upheld her termination from the City of New Orleans Department of Streets (“the Department”) for job abandonment. Based upon our review of the record, we reverse the decision of the Commission and order that appellant be reinstated to her former position as an Administrative Analyst III with full back pay and benefits.

FACTS

Appellant was a permanently classified civil service employee in the City of New Orleans Department of Streets. She was terminated by the Department on February 2, 1993, for “job abandonment.” Appellant alleges that she was constructively discharged by the Department when it transferred her to the Auto Pound to perform duties inconsistent with her position as an Administrative Analyst III. She also alleges that she was arbitrarily transferred to the night shift (3:00 p.m. to 11:00 p.m.) despite the Department’s knowledge that this would present difficulties in arranging child care for her minor daughter and would interfere with her part-time night job at the Post Office. The Department argues that she |2abandoned her job by refusing to report as ordered. The record in this case reveals the following:
Appellant was hired by the City on December 12, 1983. Her work in the Department was satisfactory, as evidenced by her eventual promotion to Administrative Analyst III on February 28, 1988. Upon obtaining classification as an Administrative Analyst III, appellant was initially assigned to the Department’s Maintenance Division where she was responsible for managing the Department’s Operating Budget and supervising purchasing, accounting, and the store room .staff. Subséquently, appellant was transferred to the Parking Division in the Meter Shop. Appellant’s main responsibility while assigned to the Meter Shop was to calculate meter revenues, a duty more appropriate for *384 an entry-level Analyst, not an Administrative Analyst III. Appellant complained almost immediately about this assignment and its obvious lack of analytical duties. Despite appellant’s protestations, the Department never assigned her responsibilities commensurate with her status; instead, it transferred her to the Policy and Regulations Section of the Parking Division. In fact, this reassignment came one day after a hearing on appellant’s complaint to the Commission concerning her duties in the Meter Shop; the Commission eventually ruled in appellant’s favor in that matter.[1]
While assigned to the Policy and Regulations Section, appellant was responsible for inventory of and measuring parking signs and for answering public requests for sign installation. It was uncontroverted at the hearing on this matter that appellant was assigned no analytical or supervisory duties. In fact, during this 'assignment, appellant was being supervised by another Administrative Analyst III, Michael Laporte, who had begun work with appellant on the same day and thus had no seniority over her.
Eventually, on February 16, 1992, appellant was assigned to the Auto Pound to perform duties consistent with those of a elerk/cashier. Appellant was responsible for filling out various forms, taking inventory of ears on the lot, and for reconciling cash on hand. During the hearing, no one denied that appellant was not given any analytical duties tojjperform while assigned to the Auto Pound. Moreover, no one disputed appellant’s claim that she was shielded from all managerial and supervisory duties during this assignment.
Appellant testified that between February and October of 1992, she continually complained about this obvious demotion to her superiors. In addition, appellant stated that she spoke with Lynn Gage of the City’s Civil Service Department, who advised appellant to seek Departmental remedies before complaining to the Commission. Unfortunately, no internal remedy ever came to fruition. Thus, on October 30, 1992, appellant filed a complaint with the Commission alleging that she was working out of her assigned classification. On November 6, 1992, the Commission informed the Department of its conclusion that appellant was working out of her class and ordered the Department to reassign her to duties consistent with that position. Suspiciously, that same day, appellant was further demoted and harassed when she was transferred to the night shift (3:00 p.m. until 11:00 p.m.) at the Auto Pound, purportedly to take the place of an employee who was about to undergo surgery.
Appellant did not report for work between November 8 and November 29, due to an illness. At the behest of Frank Ben, the Department’s Parking Administrator, the City’s Office of Municipal Investigations investigated appellant’s absence. It concluded that appellant had not abused her sick leave and thus exonerated her of any wrongdoing in that regard.
On November 30, 1992, appellant showed up for work at 8:00 a.m. She then met with Tom McDermott, Deputy Parking Administrator, and Wayne Cooper, Auto Pound Manager, who informed her that she was to punch out and return at 3:00 p.m. and work the night shift. Appellant did not comply with this request; she remained at work until 1:15 p.m., at which time she punched out and left a note that she would not be able to work the night shift that evening.
For the next two weeks, appellant intermittently contacted the Department to inform it that she would not be able to work. Testimony is contradictory as to whether appellant indicated that her daughter was sick on some of these occasions. Appellant also denies that she called the Department and indicated that although she was not sick, she nonetheless Rwould not be in to work. In any event, appellant’s last reported call to the Department was on December 14, 1992, when she spoke with Robert Otis and informed him that she would not be able to work for the remainder of the week. Appellant did, however, contact the Commission on *385 December 3, 1992, to appeal her assignment to the night shift.
On Thursday, January 7,1993, in response to appellant’s continuing absence from work, Frank Stuart, Director of the Department of Streets, sent a certified letter to appellant, ordering her to report for work for the night shift by Monday, January 11, 1993, or face possible termination. That letter was received on January 9,1993, by Kevin Jackson, who lives at appellant’s residence. Appellant denies ever receiving the letter. The Department also attempted to deliver the letter by hand, but claims its representatives were ordered off of appellant’s property. Ultimately, appellant did not appear for work on January 11.
On February 2, 1993, an administrative hearing was held on the matter and appellant was found to have violated Civil Service Rule IX, Section 1, Maintaining Standards of Service. Accordingly, on February 10,1993, via certified letter, appellant was notified of her termination. She appealed this decision and the matter was heard by a Hearing Officer on June 28, 1993. On July 28, 1993, the Hearing Officer issued his decision, upholding appellant’s termination. Appellant appealed to the full Commission, which likewise upheld her termination, although its decision was not handed down timely under Civil Service Rules. Appellant now appeals to this Court, asking that she be returned to her former position and receive all back pay and benefits of office withheld from her during her separation.

ISSUES

Appellant raises two issues in her brief:
1. Was the Commission in error in failing to rule in her favor given its delay in rendering judgment?
2. Was the action of the Commission in upholding her termination arbitrary, capricious, and unfounded in law?
| ¿ANALYSIS
The Late Decision of the Commission
Under Civil Service Rule II, Section 4.16, the Commission is required to act within 90 days of receipt of the Hearing Officer’s decision and transcript of the hearing.[2] The record reflects that the transcript was forwarded to the Commission on July 9, 1993, and that the Hearing Officer rendered his decision on July 28, 1993. Thus, a decision by the Commission was due on or before October 26,1993. However, the Commission did not enter its decision until January 19, 1994, 87 days after the 90 day period had elapsed.
Meanwhile, on December 9,1993, appellant filed a motion with the Commission requesting that it enter judgment in her favor on the grounds that it had failed to rule timely. The Commission denied appellant’s motion one day after issuing its ruling on the merits and more than a month after appellant filed her motion. In a terse, two-sentence decision, the Commission stated: “Appellant was notified that a decision was recently published in this matter. The motion is therefore denied.” Although appellant raises this issue in her brief, the Department fails to address the issue in its brief.
In considering this argument, we are guided by the Louisiana Supreme Court’s decision in Sanders v. Department of Health & Human Resources, 388 So.2d 768 (La.1980). In that case, a cook was terminated after she was found improperly in possession of a flat of eggs. On appeal, she argued that her termination was improper because the appointing authority had not complied with a rule requiring it to provide a copy of appellant’s termination letter to the Director within 15 days. Although the court of appeal found that application of the rule was “hyper-technical” and that appellant had not shown any prejudice as a result of the authority’s failure to comply with the rule because the letter arrived only three days late, it nevertheless reversed appellant’s termination. The court of appeal indicated that it was bound by the rule of Boucher v. Division of Employment Sec., 226 La. 227, 75 So.2d 343 (1954), in which the supreme court held that the termination of three civil ^service em *386 ployees was improper because each had been removed without prior advance written notice as mandated by the state civil service rule then in effect.
In Sanders, the supreme court reversed the decision of the court of appeal and overruled Boucher. In reaching its decision, the court offered the following analysis, which we find instructive:
Rule 12.3(a)(8) is phrased in the imperative, a consideration which is significant though not controlling. Whether procedural requirements such as those set forth in the rule are mandatory cannot be determined by a mere literal reading of the law but can only be determined by ascertaining the intent of the drafters. If a requirement is so essential to the statutory plan that the legislative intent would be frustrated by non-compliance, then it is mandatory. Statutes that, for the guidance of a governmental official’s discharge of duties, propose to secure order, system and dispatch in proceedings are usually construed as directory, whether or not worded in the imperative, especially when the alternative is harshness or absurdity. The word “shall” may be given merely directory meaning in cases involving prospective action of government officials if the law’s purpose is the protecting of the government by guidance of its officials rather than the granting of rights to private citizens affected. A significant consideration in determining whether a statutory requirement should be given mandatory or directory effect is a comparison of the results to which each such construction would lead.
Id. at 770-71 (citations omitted).
Applying these criteria, we conclude that Civil Service Rule II, Section 4.16, is mandatory in nature. The rule itself is phrased in the imperative and leaves little room for question as to its meaning. Although the rule could be considered directory in nature, we find that such a construction would render the rule nugatory. We find that to be an absurd interpretation of this rule, one which would allow the Commission unduly to delay deciding cases brought before it. It makes little sense for this rule to be stated in the absolute, i.e., “appeals to the Commission shall be decided promptly” (emphasis added), but for this court to attach no significance to that statement by finding no penalty for non-compliance by the Commission. Such an interpretation would, in effect, have us rewrite the rule to say “appeals to the Commission should be decided properly, but the Commission is not required to do so, and there shall be no sanction if it does not.” We are not prepared to undertake such an adventure in judicial draftsmanship.
IvOur colleague in dissent argues that under Sanders, a civil service rule is not mandatory unless it specifies the penalty for noncompliance. See Sanders, 388 So.2d at 770. We acknowledge that Sanders does contain language to that effect. However, we find that the supreme court was not articulating a bright line test in making that observation. In its decision, the court later explained:
We express no opinion on the classification of civil service rules other than [the one under consideration today] as either mandatory or directory; each rule must be classified separately after consideration of its importance to the civil service scheme and of the prejudice, if any, suffered by an employee as a consequence of the rule’s violation.
Id. at 772 (emphasis added). Thus, it is not of critical importance that Rule II, Section 4.16 does not delineate the consequences for non-compliance. It is enough for this court, applying the factors identified above, to find that the rule in question constitutes an integral part of the civil service scheme. This rule does not serve merely to guide the actions of governmental officials; it also serves to protect the property rights of permanently classified civil service employees to their positions. See Knight v. Department of Police, 619 So.2d 1116, 1118 (La.App. 4th Cir.) (“No one questions that civil service employment is a property right.”), writ denied, 625 So.2d 1058 (La.1993); see also Truax v. Department of Pub. Safety & Corrections, 93-1574, p. 6 (La.App. 1 Cir. 6/27/94); 640 So.2d 1389, 1392; Department of Pub. Safety & Corrections v. Savoie, 569 So.2d 139, 141 (La.App. 1st Cir.1990). Rules such as the one in question are established to *387 protect the integrity and independence of the civil service. See Sanders, 388 So.2d at 771. Failure to enforce these rules jeopardizes that integrity and independence by making the Commission unaccountable for dilatory decisions.
We find the Commission’s delay and its denial of appellant’s motion to be inexcusable. We also find that application of the rule to the instant ease is not hypertech-nical and that substantial prejudice resulted to appellant as a result of the Commission’s 87 day delay in deciding her case. For this reason alone, we conclude that appellant’s termination must be reversed. Were we to do otherwise, we would contravene the well-established principle of law in this state that civil service rules have the effect of law and must be given that effect by the courts. See Jack A. Parker & Assocs. v. State ex rel Dep’t of Civil Serv., 454 So.2d 162, 165 (La. App. 1st Cir.), writ denied, 459 So.2d 538 (La.1984).
|8The Merits of Appellant’s Termination
We now proceed to the merits of this ease. Preliminarily, we note that under the Louisiana Constitution of 1974, a permanent classified employee may only be disciplined for cause expressed in writing. La. Const, art. X, § 8(A). Legal cause exists where “the conduct complained of impair[s] the efficiency or the public service and ... bears a real and substantial relationship to the efficient operation of the public service in which the employee was engaged.” Montgomery v. Department of Streets, 593 So.2d 1352, 1355 (La.App. 4th Cir.1992) (quoting Ennis v. Department of Public Safety & Corrections, 558 So.2d 617, 619 (La.App. 1st Cir.1990)). An employee may appeal a disciplinary action to the City Civil Service Commission, and the burden of proof on appeal rests with the appointing authority. La. Const, art. X, § 8(A). This Court may reverse the decision of the Commission if it finds that the decision was arbitrary or capricious. Cha-Jua v. Department of Fire, 577 So.2d 332, 335 (La.App. 4th Cir.), writ denied, 580 So.2d 675 (La.1991). Review extends to both issues of law and fact. Wollerson v. Department of Agriculture, 436 So.2d 1241, 1244 (La.App. 1st Cir.), writ denied, 441 So.2d 1222 (La.1983).
The Department, relying on Abadie v. Department of Streets, 480 So.2d 425, 427 (La. App. 4th Cir.1985), writ denied, 481 So.2d 1351 (La.1986), and Church v. New Orleans Aviation Bd., 612 So.2d 126, 131 (La.App. 4th Cir.1992), writ denied, 614 So.2d 88 (La. 1993), argues that appellant was properly terminated because of her “persistent refusal to appear” for work when instructed without adequate explanation. Appellant argues that the actions of her superiors amounted to a constructive discharge.
Louisiana courts have noted that
[w]hile the difference between a quit and a discharge may seem obvious, the courts have recognized that quits which are actually compelled by the employer are not voluntary at all. Clemons v. Blache, 501 So.2d 1020 (La.App. 2d Cir.1987); Barremore v. Blache, 527 So.2d 614 (La.App. 3d Cir.1988); Schoennagel v. Louisiana Office of Emp. Sec., [413 So.2d 652 (La.App. 1st Cir.1982) ]. Such a quit is viewed as a “quit in lieu of discharge” or a “constructive discharge” and has been held, as a matter of law, to constitute good cause connected with the employment for leaving one’s employment. Henderson v. Administrator, 488 So.2d 1061, 1063 (La.App. 2d Cir.1986).
9Wood v. Department of Employment Sec., No. 25545 (La.App. 2 Cir. 2/23/94); 632 So.2d 899, 901. Typically, claims of constructive discharge stem from an employer’s request that an employee engage in a hazardous or potentially dangerous task that is atypical of the employee’s usual course and scope of employment. E.g., Clemons, 501 So.2d at 1023. However, claims of constructive discharge are not limited to such requests, and can be provoked by an employer under a variety of circumstances. E.g., Henderson, 488 So.2d at 1063-64.
A complete review of the record in this matter reveals that the Department was acting with retaliatory motives in transferring appellant to the night shift and in assigning her duties well below her classification. Testimony at the hearing established that appel *388 lant was the only Administrative Analyst III that ever worked at the Auto Pound who was not assigned duties primarily managerial in nature. Moreover, testimony proved that appellant was the only analyst required to work hours other than a normal working day (8:00 a.m. to 4:00 p.m.). These facts did not escape the attention of the Commission, which noted in its decision that
[t]he Director of Streets transferred Appellant, an experienced analyst, from his budget staff to the Parking Division where no duties appropriate to her level existed. Coincident with her subsequent complaints and appeals, she was further transferred into positions where she was under the supervision of others in her same class and in some cases a class well below her level.
Additionally, the Commission stated that the actions taken against appellant by her superiors “displayed a continuation of a pattern of misunderstanding and neglect of the letter and spirit of Civil Service Law_ [A] pri-ma facie violation of Rule II Section 9 suggests itself. Such action by an Appointing Authority is worthy of censure.”[3]
| ipDespite reaching this conclusion, the Commission held that appellant was properly terminated because she failed to report for work. It explained that “[t]he fact that she may have properly objected to the assignment did not relieve her of the obligation of every employee to follow orders which are not manifestly illegal or immoral.” However, in light of her superior’s actions against her, we conclude that appellant was constructively discharged. As noted above, it is well established that under certain circumstances what may appear to be a voluntary quit is, in fact, a constructive discharge by an employer. Wood, 632 So.2d at 901. As the Third Circuit explained in McGinnis v. Moreau, 149 So.2d 188 (La.App. 3d Cir.1963), “mere dissatisfaction with working conditions does not constitute ‘good cause’ for quitting employment, unless the dissatisfaction is based upon discriminatory or unfair or arbitrary treatment or is based upon a substantial change in wages or working conditions.” Id. at 190.
In this case, the Department’s actions, as noted by the Commission, violated Civil Service Rules and represent a pattern of harassment sufficient to prompt appellant to leave her position. She was continually transferred and assigned duties that were patently below her classification as an Administrative Analyst III in retaliation for exercising her rights as a civil service employee. When the Director of Personnel ultimately requested that appellant be assigned to duties commensurate with her position, she received a memo from the.Deputy Parking Administrator setting forth the following responsibilities: “1. Allocation of manpower. 2. Daily shift lot inventory statistics. 3. Daily shift driver performance statistics. 4. Balance city funds received from tow releases. 5. Other duties as assigned.” Appellant testified that these duties would occupy no more than about an hour per shift; this testimony was not rebutted by anyone from the Department. We thus concur with the Commission’s conclusion that appellant’s duties while assigned to the Auto Pound do not “approach the level of responsibility of an [Administrative] Analyst III.” Compared with her prior work on the Department’s budget, appellant’s duties at the Auto Pound constitute a demotion to an entry-level position that is wholly unjustified. The Commission’s attempt to excuse the Department’s actions by requiring that a person in such a position continue to Inreport for work and endure such harassment must be rejected by this court. As such, we find that appellant was constructively discharged.
Although we agree with the Commission that civil servants simply cannot ignore the legitimate orders of their superiors, we cannot remain blind to the reprehensible pattern of conduct perpetrated on appellant, nor can *389 we accept that Commission’s blithe reasoning that only the public fisc was injured in this case. Accordingly, we find that, independent of the Commission’s untimely decision in this matter, appellant’s termination must be reversed.

CONCLUSION

For the forgoing reasons, we reverse the decision of the Commission that upheld appellant’s termination. We thus order the Department of Streets to reinstate appellant to her former position as an Administrative Analyst III, with duties commensurate to that position. Additionally, appellant shall receive back pay to the date of her termination and restoration of all benefits. All costs are assessed against the Department.

REVERSED.

. Bannister v. Department of Streets, No. 4170, Civil Service Commission, City of New Orleans, July 22, 1992.

. In relevant part, this rule states: "Appeals to the Commission shall be decided promptly, but in any event within 90 calendar days ... [of] receipt by the Commission of the Hearing Officer’s Report and official transcript of the testimony of said hearing.”

. In pertinent part, this rale states:
No employee shall be subjected to discipline or discriminatory treatment by an Appointing Authority because he or she gives information, testimony or evidence in a prudent manner to appropriate authorities concerning conduct prohibited by law or regulations which he or she reasonably believes to have been engaged in by any person(s). If the employee incurs such treatment despite this admonition, he or she shall have a right of appeal to this Commission.
Rule II, Section 9.1