1BYRNES, Judge.
Chief Herbert Patterson is the Coordinating Deputy Chief/Senior Deputy Chief of the New Orleans Fire Department and has been *552 employed by the City of New Orleans for nearly thirty years.
On November 18, 1994, Chief Patterson entered the office of the Firefighter’s Credit Union. In addition to the white teller, there was perhaps another white male and four African-American females present. Chief Patterson testified that this was more people than he would normally encounter in the small office prompting him to remark as he entered something to the effect that they must be “giving away free” food. Subsequent to the event three of the African-American females wrote letters of complaint stating that they had been offended by Chief Patterson’s remarks. They said that Chief Patterson had said that “they must be giving away food stamps” which they felt disparaged them both as females who had been on welfare at some time in the past, and as African-Americans.
Pursuant to these complaints, it appears that Chief Patterson was charged with violating New Orleans Fire Department Rules, Sections 13:18 and 14.01. An internal hearing was held as a result of which it was recommended that Chief Patterson be given a letter of reprimand and that he apologize to the complaining witnesses in writing based on a finding that Chief Patterson violated Sections Ial3:18 and 14.02.[1] In spite of this recommendation, Superintendent McDaniels suspended Chief Patterson for 30 days (from February 20,1995 through March 21,1995) at a cost to Chief Patterson of approximately $5100.00 in lost pay and benefits.
Chief Patterson appealed his suspension to the Civil Service Commission. A hearing before Harry Tervalon, Jr., hearing examiner, was held on September 22, 1995. Hearing Officer Tervalon issued his findings on September 27, 1995. He concluded that the City failed to prove its allegations of racial remarks. He also found that the main complaining witness had violated departmental procedures in bringing her complaint and urged that action be taken against that witness. It appears that no such action was ever taken. The Civil Service Commission failed to act on these finding until April 6, 1998, at which time they rejected the findings of the hearing examiner and instead chose to sustain the 30-day suspension.
At the time of the Civil Service Commission hearing Chief Patterson could not state with certainty that he had not said “food stamps” instead of “free food.” However, he was able to state with certainty that whatever he said he said as an ^attempt at humor (however misguided that attempt might appear in hindsight) and with no intent to disparage anyone on account of race or gender. Prior to this incident Chief Patterson’s record of many years of service with the Fire Department is without blemish. The record does not support a finding that anything Chief Patterson said was said with the intention to disparage or offend. Chief Patterson’s background belies such a view. He was born in Charity Hospital. His mother was a single parent during much of his childhood, and he often had to wait with her in welfare lines. The record reflects that Chief Patterson’s relationship with members of the African-American community went far beyond what could be characterized as professionally correct and formally proper. It was personal. For example, Anna Batiste, an African American, testified that Chief Patterson and her husband served together for *553 many years as elders of the same church. Chief Patterson delivered a funeral oration at her husband’s funeral, and Ms. Batiste’s daughter stood in Chief Patterson’s daughter’s wedding and signed the wedding certificate. The worst that the witnesses against Chief Patterson could say was that the remark was insensitive and unprofessional, or a bad joke. None characterized it as being motivated by any racial or gender animus.
Civil Service Rule II, § 4.16 provides:
Appeals to the Commission shall be decided promptly, but in any event within ninety (90) calendar days after ... receipt by the Commission of the Hearing officer’s report and official transcript of the testimony of said hearing.
In Bannister v. Department of Streets, 95-0404 (La.1/16/96); 666 So.2d 641, the Supreme court held that the above language was directory, rather than mandatory. The Supreme Court reversed the decision of this Court[2] whereby we [¡overturned the decision of the Commission because the Commission decision was not rendered until 87 days after the 90 day period called for in Rule II had expired. The Supreme Court reasoned that the possible prejudice to the employee caused by the delay was not the only consideration. The Supreme Court noted that “the Commission’s authority to award back pay, to reinstate benefits, and to modify disciplinary actions ... can be utilized to largely rectify the potential prejudice resulting from a delayed ruling in favor of the employee.” Id., 666 So.2d at 646-647. The Supreme court also expressed concern about the injustice that “may arise from suffering the continuance of incompetent or insubordinate civil servants as from wrongfully terminating the ‘protected property rights of permanently classified civil service employees to their positions.’ ” Id.
We feel that the facts of this case distinguish it from Bannister. At some point justice delayed becomes justice denied. In light of Bannister, we cannot say exactly where that point is, or whether it is a bright line or a range. In this case it does not matter. The delay in this case is more than eight times as long as the eighty-seven-day delay found in the Bannister case. This is not a matter of continuing the employment of someone whose continued service has been found to be detrimental to the public as it was in Bannister. With the exception of the period of his suspension (February 20, 1995 through March 21,1995), Chief Patterson has continued to work during the entire period he waited for his appeal to be decided, but he had to do so with this matter hanging over his head. We feel that this delay in itself and all that Chief Patterson has been through, along with his written apologies, is punishment enough for what at worst can only be characterized as one stupid and insensitive remark. The record will not support a finding that the remark was made with any racial or sexist intent.
fcFor the foregoing reasons, the decision of the Civil Service Commission is reversed. All pay and benefits are to be restored to Chief Patterson with interest and all costs of these proceedings are to be borne by the appellee.

REVERSED.

. Chief Patterson complains that it was a violation of due process to find him guilty of a violation of Section 14.02 when he was charge with a violation of Section 14.01. As we have decided this case on other grounds, we never reach this issue'.
Section 13:18 — Race, Religion, Political Affiliation:
No member shall be prejudiced or annoyed because of race, religion, or political affiliation.
Section 14:01 Conduct and Behavior
Members shall be governed by the ordinary and reasonable rules of good conduct and behavior and shall not commit any act tending to bring reproach or discredit upon themselves or to the Department. Profane or indecent language is strictly prohibited at all times.
Section 14:02 Courtesy and Respect
All members of the Department are required in their dealings with each other to observe a courteous demeanor. Officers and members, in addressing each other, shall do so in a respectful manner. Threatening, or insulting language shall not be tolerated. In addressing or referring to an Officer by a subordinate, his title shall be used and shall never be omitted, altered or abbreviated.

. 94-0604 (La.App. 4 Cir. 11/30/94); 647 So.2d 382.