471 So.2d 909 (1985)
Bertha JENKINS, Appellant,
v.
Cecil J. BLACHE, Administrator of the Louisiana Office of Employment Security, and Weil Cleaners, Appellee.
No. 17023-CA.
Court of Appeal of Louisiana, Second Circuit.
June 12, 1985.
*910 North Louisiana Legal Assistance Corp. by David A. Titman, Monroe, for appellant.
Legal Unit/Office of Employment Sec. by Denise A. Nagel, Baton Rouge, for appellee.
Before HALL, JASPER E. JONES and NORRIS, JJ.
NORRIS, Judge.
This is an unemployment compensation case. Appellant, Bertha Jenkins, applied for benefits after being discharged from her job at Weil Cleaners in Monroe. The claims adjudicator, the appeals referee and the Board of Review all denied her comp. The district court affirmed the Board. We find that the adjudicators and the court below applied a legally incorrect standard and, as a result, ignored a large quantity of evidence that should have qualified appellant for comp. We reverse and remand.

FACTS
Ms. Jenkins worked for Weil Cleaners from October 1982 until July 29, 1983. She put in nine-hour days (except on Monday, when she worked only eight hours) and earned $3.70 an hour. For several months before the separation, she had been assigned to the shirt pressing operation. When shirts arrive at the plant, they are first washed, then pressed, then "bagged and tagged" for delivery. The pressing operation is a two-person procedure. The first worker presses the collar, cuff and sleeve, and then hands it to the second worker, who presses the body of the shirt. Ms. Jenkins was the second presser. Since the second presser is the last employee to work with the shirt closely, she is expected not only to do her part of the pressing but also to inspect the shirt for damages. The most common damage is the cracked or *911 missing button. The second presser is responsible for carrying the damaged shirts to the seamstress for repair before the shirts are sent out.
Mr. Weil, the owner, and Mr. Oden, the supervisor, were not pleased with Ms. Jenkins's work performance. They claimed she was not finishing enough shirts per hour, and that too many pieces were stacking up between the first presser and Ms. Jenkins. She attempted to explain to the personnel manager that she would put out more shirts, except that she had to stop and walk over to the seamstress every time she found a broken button. Mr. Oden said he tried to explain to her that she should separate out all the damaged pieces and carry them over in a bunch, instead of stopping for every one. But, according to Mr. Oden, Ms. Jenkins would not listen to his suggestions, nor would she listen to any of her co-workers, who tried to give her tips. She was considered "unwilling to cooperate." Later, some customers began returning shirts, complaining of missing or broken buttons that Ms. Jenkins had failed to catch. On several occasions, Mr. Oden orally warned her that she had to pick up her pace and do a better job with the buttons. Under increasing pressure to work faster, Ms. Jenkins responded to one of Mr. Oden's warnings by shouting back at him. This was several weeks before her termination.
On Friday, July 29, Mr. Oden went around to all the employees with the unpopular news that the company's computer was on the blink and that the paychecks would "probably" not be printed until Saturday morning. When he told this to Ms. Jenkins at about 4:00 p.m., she grew angry and shouted at him, to the effect that she had worked for her money and needed it to pay her bills. This display was in the presence of Mr. Oden and the first presser. Mr. Oden did not argue with her, but calmly reported the incident to Mr. Weil, who told Ms. Jenkins not to report back to work Monday morning. By stroke of fortune, someone fixed the computer and all the employees got their checks that afternoon just after 5:00 p.m.
Before the appeals referee, Mr. Weil testified that he had been planning to get rid of Ms. Jenkins for three or four weeks. When he heard about the second shouting incident, he decided to fire her on the spot.

DISCUSSION
The court's jurisdiction in a case of this sort is limited to questions of law, provided the Board of Review's conclusions are supported by the evidence and not tainted by fraud. LSA-R.S. 23:1634; Banks v. Adm'r, etc., 393 So.2d 696 (La.1981). There is no allegation of fraud in this case. We feel, however, that the evidence does not support the Board's conclusion and that the Board committed legal error by applying an improper standard of proving insubordination as disqualifying misconduct.
In order to prove disqualifying misconduct under LSA-R.S. 23:1601(2), the employer must prove that the claimant is guilty of intentional wrongdoing. Banks v. Adm'r, supra. Misconduct is also interpreted to mean an act of wilful or wanton disregard of the employer's interest, a deliberate violation of the employer's rules, disregard of standards of behavior which the employer has a right to expect of his employee, or negligence in such degree or recurrence as to manifest culpability, wrongful interest or evil design. See Atkins v. Doyal, 274 So.2d 438 (La.App. 1st Cir.1973); La. Office of Fam. Serv. v. Adm'r, 427 So.2d 539 (La.App. 3d Cir.1983), and citations therein.
The bulk of Mr. Oden's testimony was devoted to describing appellant's inefficiency on the job. He introduced a pamphlet which listed the standard quotas for one-person and two-person shirt pressing procedures. He could not remember, however, specifically telling appellant what her quota was, nor did he tell her that making a quota was a condition of employment. Furthermore, Mr. Oden never issued her a written reprimand; everything seems to have been done informally. Mr. Weil was prepared to fire Ms. Jenkins on the basis of substandard work performance. The law is extremely well settled *912 that this is not disqualifying grounds. Simmons v. Gerace, 377 So.2d 407 (La. App. 2d Cir.1979); La. Office of Fam. Serv. v. Adm'r, etc., supra.
The employer was so eager to show appellant's incompetence that Mr. Oden presented some after-the-fact evidence. After discharging appellant, they hired in her stead two retired ladies on Social Security, each of whom could work only a 4½ hour shift. With this new arrangement, the shirt pressing unit easily met and often exceeded the quota. An employer has the absolute right to discharge any employee, but when he does so on grounds of incompetence, he is obligated to pay unemployment. The evidence overwhelmingly shows that Weil sought to fire Ms. Jenkins for incompetence and to replace her with part-time workers. Mr. Weil only needed the occasion to discharge her.
The occasion was the second shouting incident. The adjudicators and the court below found the second shouting incident to be an act of insubordination, misconduct sufficient to disqualify appellant. They relied heavily on the jurisprudence of Johnson v. Brown, 134 So.2d 388 (La.App. 3d Cir.1961) and Freelow v. Sumrall, 425 So.2d 945 (La.App. 4th Cir.1983).[1] These cases hold that a single "hothead" incident is not sufficient to prove insubordination. The trial court inferred that a second "hothead" incident is automatically adequate proof. This is incorrect. There is no rigid rule that every employee gets one tantrum free. Indeed, a single incident of insubordination may warrant disqualification. See Dorsey v. Adm'r, etc., 353 So.2d 363 (La. App. 1st Cir.1977), writ denied 355 So.2d 549 (La.1978). Just as a single incident need not absolve the employee, a second incident need not condemn him. The showing necessarily depends on all the circumstances.
The first shouting incident occurred when appellant was under severe stress and pressure to improve her output. When the supervisor scolded her, she overreacted. She did not use vulgar words or attempt to smear her employer's business reputation. Freelow v. Sumrall, supra. The second incident occurred late on a Friday afternoon, a payday, and was a response to stimuli that would have upset any working personthe news that he might not get paid. Once again, appellant used no abusive language; there was only one other employee in the immediate vicinity; and the supervisor did not feel particularly threatened or undermined by the situation. Under these circumstances, it was error to conclude that the alleged "hothead" incidents amounted to misconduct.
For the reasons assigned, the judgment appealed from is reversed. It is now ordered, adjudged and decreed that the Board of Review of the Division of Employment Security, Department of Labor, State of Louisiana, issue an order directing payment to appellant of the unemployment benefits to which she is entitled. The employer, Weil Cleaners, is cast for all costs.
REVERSED AND REMANDED.
NOTES
[1] See also La. Office of Fam. Serv. v. Adm'r, supra. The claimant's conduct in that case was much more egregious than Ms. Jenkins's. That claimant slapped her supervisor and was not disqualified.