KLIEBERT, Judge.
This is an unemployment compensation case. The claimant, Wayne Kliebert,[1] applied for unemployment benefits after being discharged from his job as a bargeman at Peavey Grain Elevator in Paulina, Louisiana. The Administrator of the Office of Employment Security (Administrator) determined Kliebert was discharged for misconduct connected with his employment and therefore was disqualified for unemployment benefits. The decision was affirmed by both an Appeals Referee and the Board of Review of the Office of Employment Security. Kliebert thereafter filed a petition for review in the district court. In answer to the petition the Administrator reversed his position at the time the case was before him and prayed that benefits be granted to plaintiff. Nevertheless the trial court found no basis for reversing the findings of the appeals tribunal and rendered a judgment affirming the Board of Review’s decision. Kliebert has appealed and filed a brief. The Administrator neither appealed nor filed a brief in support of Kliebert’s appeal. A brief was filed on behalf of Peavey Company. We reverse and remand the case to the Board of Review with instructions to grant unemployment benefits to the appellant.
In unemployment compensation cases the scope of judicial review is limited to questions of law. The Board of Review’s findings as to the facts, if supported by the evidence, and not tainted by fraud, are conclusive. LSA-R.S. 23:1634; Banks v. Administrator of Department of Employment Security, 393 So.2d 696 (La.1981). This court cannot weigh the evidence, reevaluate it, or substitute its views for that of the Board of Review as to the correctness of the facts. Dubois v. La. Department of Labor, Office of Employment Security, 427 So.2d 645 (5th Cir.1983).
There is no allegation of fraud in this case. The appeals referee made the following findings of fact which, upon review of the record of the administrative hearing, we find to be clearly supported by competent testimonial and documentary evidence:
“The claimant worked for the named employer for approximately three years and nine months as a bargeman. The claimant last worked for the named employer on February 15, 1984. His supervisor was (Ms.) Brenda Scott, dock foreman. Around 6:20 a.m., the claimant was in the cab of the marine leg, which draws grain from the barges. The claimant was visiting with his friend, who was the operator in the cab. Ms. Scott had informed a meeting of bargemen that the only people authorized to be in the cab were operators and those employees waiting to relieve operators. On this particular occasion, Ms. Scott called the cab and spoke with the operator. She told him to tell the claimant to return to the barge shack. The claimant did return to the barge shack, which is connected to the foreman’s shack. The claimant told Ms. Scott that she could talk to him directly and expressed his dissatisfaction that she spoke to him through the operator. Ms. Scott re *143 ferred to the claimant as a “little boy” for making a comment such as that. The claimant said that he would throw her tail in the river. Other comments were exchanged between the claimant and the foreman, and profanity was used. Ms. Scott went to the plant manager, John Beach and explained that the claimant had threatened to “kick” her tail in the river. According to Mr. Beach, Ms. Scott appeared shakened and upset. An investigation of the incident was conducted, including an interview of the claimant by Mr. Beach. The claimant acknowledged to Mr. Beach that he had used obscene language toward Ms. Scott and had told her that he would kick her a — in the river and did offer to meet her in the parking lot. Mr. Beach discharged the claimant for threatening his supervisor.”
Based on these facts the referee concluded and the Board of Review and district court agreed that appellant was guilty of misconduct connected with his employment and therefore disqualified under LSA-R.S. 23:1601(2) for unemployment benefits.[2] Appellant does not contest the factual findings of the appeals tribunals but rather contends that under the law a single “hotheaded” incident cannot be considered the type of pre-meditated and improper misconduct necessary to disqualify him for unemployment benefits. In support of his contention, he cites Henton v. Brown, 157 So.2d 238 (3rd Cir.1963); Bridges v. Western Electric Co., 304 So.2d 850 (2nd Cir. 1974); and Freelow v. Sumrall, 425 So.2d 945 (4th Cir.1983).[3]
In order to prove disqualifying misconduct under LSA-R.S. 23:1601(2) the employer must prove that the claimant is guilty of intentional wrongdoing, i.e., “an act of wilful or wanton disregard of the employer’s interest, a deliberate violation of the employer’s rules; disregard of standards of behavior which the employer has a right to expect of his employee; or negligence in such degree or recurrence as to manifest culpability, wrongful interest or evil design ...” Jenkins v. Blache, 471 So.2d 909 (2nd Cir.1985); Williams v. Administrator of the Office of Employment Security, 474 So.2d 544 (3rd Cir.1985).
Henton held that a single hot-headed incident, wherein an employee engaged in a fight with a co-employee, was not disqualifying misconduct. Bridges held dropping small terminal boards on a supervisor’s desk and walking away during an argument with the supervisor over the boards, when viewed as a single isolated incident in the course of satisfactory performance over a period of years, was not disqualifying misconduct. Freelow held calling a supervisor a fool and accusing him of not knowing his job, while speaking to the supervisor in the presence of co-employees, was not disqualifying misconduct where the employee had no history of such incidents.
Henton, Bridges and Freelow follow the principles enumerated in Johnson v. Brown, 134 So.2d 388 (3rd Cir.1961), wherein the court stated:
“[2,3] We may at the outset state that a single hotheaded incident cannot be considered the type of premeditated and seriously improper conduct which constitutes, within the meaning of the statute, the serious cause sufficient to deny unemployment compensation benefits to an employee. An employer has, of course, the legal right to discharge an employee without cause or for any cause; but such employee ordinarily is upon application entitled to unemployment compensation benefits when his terminated employment is covered by the Louisiana Unemployment Compensation Law. LSA-R.S. 23:1471 et seq. These benefits are not paid primarily to reward the employee or to punish the employer, but rather to protect the stability of the state of the family.
As the Louisiana legislature declared in enacting this beneficial statute, ‘As a guide to the interpretation and application of this Chapter, the public policy of *144 this state is declared to be as follows: Economic insecurity due to unemployment is a serious menace to health, morals and welfare of the people of this state. Unemployment is therefore a subject of general interest and concern which requires appropriate action by the Legislature to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his family. The achievement of social security requires protection against this greatest hazard of our economic life.’ LSA-R.S. 23:1471.”
We are convinced that the instant case involved such a single hot-headed incident. The supervisor admitted the appellant “had never acted that way and I didn’t know what had enticed him to do something like that.” Further, the appeals tribunal noted that no bodily harm was done to the supervisor and the threat may not have been meant literally. We believe the Administrator was correct in his belated conclusion that the appellant’s actions, while grounds for discharge, fell short of disqualifying misconduct as defined in our jurisprudence.
Accordingly, the judgment of the district court is reversed and this case is remanded to the Board of Review to grant unemployment benefits to the claimant in accordance with law.
REVERSED AND REMANDED.

. No relationship to writer.

. The court did not conduct a trial de novo but rather summarily reviewed the decision of the Board of Review and the underlying decision of the Appeals Referee. See LSA-R.S. 23:1634.

. It was on this basis and citing the same cases that the Administrator advocated reversal of the Board of Review’s decision.