632 So.2d 899 (1994)
Roy WOOD, Jr., Plaintiff-Appellant,
v.
LOUISIANA DEPARTMENT OF EMPLOYMENT SECURITY, Defendant-Appellee.
No. 25545-CA.
Court of Appeal of Louisiana, Second Circuit.
February 23, 1994.
*900 Barry G. Feazel, Shreveport, for appellant.
J. Jerome Burden, Baton Rouge, for appellee.
Before NORRIS, HIGHTOWER and STEWART, JJ.
NORRIS, Judge.
Roy Wood appeals administrative and district court decisions that denied his claim for unemployment compensation. For the reasons expressed, we reverse and render.
For over nine years, Wood held two jobs. His full-time job was as a commissioned officer of the New Orleans Police Department. His part-time job, about 12 hours a week at $7.00 per hour, was as a security guard for Rue Parc Fontaine Apartments. Parc Fontaine's management agent, Mustang Management, used only off-duty commissioned police officers for security because these were permitted to carry a gun on private property. R. p. 34. According to Wood and his police supervisor, Sgt. Bass, Mustang had always used off-duty commissioned officers for security.
In late September 1991 the N.O.P.D. underwent some changes which were unfavorable to Wood. He therefore resigned his commission.[1] According to Wood, Sgt. Bass then told him: "You know, I'll have to replace you on the [security] detail because * * * obviously you can't work here [at Parc Fontaine] if you're not a commissioned Police Officer." R. p. 29. Sgt. Bass verified that he "advised him [Wood] that he no longer could work in a capacity * * * with Mustang Management since he was no longer a commissioned Police Officer." R. p. 31. Although Wood never explicitly testified that he quit the security detail, the department treated his claim as a "voluntary quit" and the adjudicator disqualified him. After a hearing, the ALJ also disqualified him, finding that "the claimant initiated his separation, and his leaving was not for good cause attributable to a substantial change made to the employment by the employer." La.R.S. 23:1601(1)(a). The Board of Review affirmed the ALJ without comment.
On judicial review,[2] the district court disagreed with the agency's analysis of the record, ruling that Wood's separation from employment "came closer to being termination for lack of an important qualification than it *901 did to a true layoff." Citing and relying on La.R.S. 23:1601(1)(a), the court further found that Mustang did not make a substantial change in Wood's employment, resulting in his separation. However, the court reasoned that an employer may adopt and enforce qualifications of employment, provided these are not discriminatory, against public morals, or in violation of regulation, ordinance or statute. In support the court cited Cooper v. Doyal, 205 So.2d 59 (La.App. 4th Cir.), writ denied 251 La. 755, 206 So.2d 97 (1968), and Brown v. Southern Airways Inc., 170 So.2d 245 (La.App. 4th Cir.1964), writ refused 247 La. 361, 171 So.2d 478 (1965), which upheld disqualifications of airline stewardesses who got married contrary to company policy. Thus, even though Wood's separation was a termination at the employer's insistence, the court upheld the disqualification.
The distinction between a quit and a discharge is critical, as it affects the standard whereby the claimant is qualified for benefits. The statute, La.R.S. 23:1601, provides in pertinent part:
§ 1601. Disqualification for benefits
An individual shall be disqualified for benefits:
(1)(a) If the administrator finds that he has left his employment from a base period or subsequent employer without good cause attributable to a substantial change made to the employment by the employer. * * * (emphasis added)
This court has held that the word "left" in this subsection is intended to cover those situations where an employee quits, or voluntarily leaves or resigns, his employment. Piggly Wiggly of Springhill Inc. v. Gerace, 370 So.2d 1327 (La.App. 2d Cir.1979); see also Schoennagel v. Louisiana Office of Emp. Sec., 413 So.2d 652 (La.App. 1st Cir. 1982). By contrast, a different standard applies to discharges:
An individual shall be disqualified for benefits: * * *
(2)(a) If the administrator finds that he has been discharged by a base period or subsequent employer for misconduct connected with his employment. Misconduct means mismanagement of a position of employment by action or inaction, neglect that places in jeopardy the lives or property of others, dishonesty, wrongdoing, violation of a law, or violation of a policy or rule adopted to insure orderly work or the safety of others. * * *
An element of intentional wrongdoing or wilful disregard of the employer's interests must be present for a discharged employee to be guilty of misconduct disqualifying him from receiving unemployment compensation benefits. Charbonnet v. Gerace, 457 So.2d 676 (La.1984); Martin Mills Inc. v. Leon, 576 So.2d 1165 (La.App. 3d Cir. 1991).
The unemployment compensation statute must be liberally construed to serve its remedial purpose. Parker v. Gerace, 354 So.2d 1022 (La.1978). Thus "misconduct" under 23:1601(2)(a) must be construed in such a way as to favor coverage. Operators Inc. v. Comeaux, 579 So.2d 1228 (La.App. 3d Cir.1991).
While the difference between a quit and a discharge may seem obvious, the courts have recognized that quits which are actually compelled by the employer are not voluntary at all. Clemons v. Blache, 501 So.2d 1020 (La.App.2d Cir.1987); Barremore v. Blache, 527 So.2d 614 (La.App. 3d Cir.1988); Schoennagel v. Louisiana Office of Emp. Sec., supra. Such a quit is viewed as a "quit in lieu of discharge" or a "constructive discharge" and has been held, as a matter of law, to constitute good cause connected with the employment for leaving one's employment. Henderson v. Administrator, 488 So.2d 1061, 1063 (La.App. 2d Cir.1986).
In our view, the department improperly characterized Wood's separation as a voluntary quit. The transcript of the hearing before the ALJ is abundantly clear that Wood was given no choice but to quit. The trial court was not plainly wrong to find, as a matter of law, that Wood's situation was tantamount to a discharge.
The trial court erred, however, in applying the wrong standard of qualification for benefits. In the event of a discharge, the claimant may be disqualified only on a finding *902 of "misconduct connected with his employment." R.S. 23:1601(2)(a). On this record there is no allegation or hint of misconduct such as that described in Charbonnet v. Gerace, supra. Without such evidence, the trial court was plainly wrong to disqualify Wood.
The district court supported its result by citing the somewhat dated stewardess cases of Brown and Cooper, supra. Although factually similar, Brown is inapplicable because it involved a true resignation and thus a different standard of qualification. Further, we distinguish Cooper; there, the claimant was indeed guilty of some misconduct by intentionally making false statements in her re-employment request. There is simply no evidence of misconduct in the instant case. Further, the court in Cooper never mentioned R.S. 23:1601(2)(a).
The district court also rationalized its decision by saying that the employer may adopt and enforce reasonable qualifications of employment; if the employee fails to meet these, the employer may discharge him with the result that he is disqualified from benefits. While this analysis has a certain appeal, it does not conform to the statutory mandate that a discharged employee may be disqualified only on a finding of misconduct connected with employment. R.S. 23:1601(2)(a). Admittedly, an employee who is constructively discharged may also be guilty of intentional misconduct and therefore disqualified. See, e.g., Barremore v. Blache, supra. In the absence of misconduct, however, an actual or constructive discharge is usually non-disqualifying. Henderson v. Administrator, supra; Schoennagel v. Louisiana Office of Emp. Sec., supra.
The instant case is actually more comparable to situations in which an employee is fired because he is unable to perform the job for which he was hired. Such an employee obviously breaches the implicit "qualification of employment" that he be competent, but such a discharge is uniformly held to be non-disqualifying. See, e.g., Banks v. Administrator, 393 So.2d 696 (La.1981); Simmons v. Gerace, 377 So.2d 407 (La.App. 2d Cir.1979); Ford v. Patin, 534 So.2d 1003 (La.App. 3d Cir.1988).
Finally, Wood's resignation from the N.O.P.D. was for good cause and non-disqualifying; with respect to the part-time job, it would be inconsistent to hold that this constructive discharge, which was simply a result of his resignation, was disqualifying. It was not.
In brief Wood has raised an additional argument challenging the constitutionality of Department of Labor regulations that would disqualify him from all benefits if one separation is found disqualifying. These regulations were neither included in the record nor requested by the parties, so we cannot take notice of them. La.C.E. art. 202 B(1)(b). Moreover, the constitutional claim was not presented at the trial level and we will not consider it for the first time on appeal. Brown v. Williams, 587 So.2d 732 (La.App. 2d Cir.1991), and citations therein. We therefore decline to address the constitutional argument; it is, at any rate, probably moot because of our disposition on the merits.
For the reasons expressed, the judgment is reversed. The Department of Employment Security is ordered to pay Roy Wood the unemployment compensation benefits to which he is entitled by law. Costs are not assessed. La.R.S. 23:1548.
REVERSED AND RENDERED.
HIGHTOWER, J., concurs with written reasons.
HIGHTOWER, Judge, concurring.
I concur in the result, but would observe that under certain circumstances, even in the absence of misconduct, an actually or "constructively" discharged employee may be denied unemployment benefits.
The actions of an employee who voluntarily disqualifies himself for continued employment, e.g., by voluntarily failing to renew a required chauffeur's license or by voluntarily resigning a required law enforcement commission, would be tantamount to "leaving" his employment. In such instances, his decision to "leave" should be evaluated for "good cause" under R.S. 23:1601(1)(a).
*903 However, as shown by an exhibit in the present record, Mr. Wood reluctantly left the NOPD due to problems created by new working hours there, and only after he tried to obtain other shifts within the Department. Thus, he apparently found himself, in effect, forced to resign his commission. Under these facts, he should not be deprived of unemployment benefits.
NOTES
[1] The instant record includes copies of separate proceedings in which the department ruled that Wood's resignation from the N.O.P.D. was for good cause and non-disqualifying. R. p. 45.
[2] Venue was in Wood's new domicile, Ouachita Parish. La.R.S. 23:1634.