954 So.2d 203 (2007)
CITY OF MONROE, Plaintiff-Appellee
v.
Yancy TOLLIVER and Administrator, Office of Employment Security, Defendants-Appellants.
No. 41,969-CA.
Court of Appeal of Louisiana, Second Circuit.
March 7, 2007.
*204 Cynthia Batiste, J. Jerome Burden, Louisiana Department of Labor, for Appellants.
Nanci Summersgill, City Attorney, La Koshia R. Roberts, Assistant City Attorney, for Appellee.
Before BROWN, WILLIAMS, and SEXTON (Pro Tempore), JJ.
BROWN, Chief Judge.
The issue in this case is whether incarceration for criminal charges later dismissed serves to disqualify a discharged employee from collecting unemployment compensation benefits. Specifically, whether under these circumstances, the employee's discharge, which occurred while he was in jail and was based upon violation of the employer's attendance policy, was for misconduct connected with his employment.

Facts
Claimant, Yancy Tolliver, had been employed by City of Monroe for more than three years when, on February 26, 2005, he was arrested and charged with forcible rape and intimidating a witness.[1] Tolliver, a labor leader, promptly informed his employer of his incarceration and his inability to post bond. Tolliver remained incarcerated until July 14, 2005, when charges were dismissed. The City of Monroe allowed Tolliver to exhaust all available vacation leave and an additional five days leave without pay before discharging him on May 10, 2005.
After his release from jail, Tolliver filed a claim for unemployment benefits with the Louisiana Department of Labor, Office of Regulatory Services ("Department"). In response, the City of Monroe asserted that Tolliver was ineligible for benefits because he was discharged for violating the City's attendance policy which provided that incarceration for any reason which causes an employee to be absent from work is an unauthorized absence.
After evaluating the claim, the Department determined that Tolliver was discharged for insubordination and, therefore, not eligible to receive unemployment compensation benefits. Tolliver appealed to an Administrative Law Judge ("ALJ") for the Office of Regulatory Services. At the hearing on September 23, 2005, both Tolliver and his employer appeared and testified. Following the hearing, the ALJ concluded that Tolliver did not willfully violate the employer's rule on absenteeism due to incarceration and was qualified for benefits.
The City appealed the ALJ's decision to the Louisiana Board of Review, which affirmed the ALJ's decision. Thereafter, the City filed a petition for judicial review with the Fourth Judicial District Court. The district court reversed and disqualified Tolliver from receiving unemployment compensation benefits. The court concluded *205 that it would be unreasonable to expect an employer to indefinitely hold a job for an incarcerated employee, that the City's attendance policy was clear, and that its violation warranted Tolliver's disqualification. Tolliver and the Louisiana Department of Labor, Office of Employment Security, have appealed from the district court's ruling.

Discussion
In Grimble v. Brown, 247 La. 376, 171 So.2d 653, 655-56 (1965), the supreme court stated:
The Court of Appeal, relying on the Smith[ v. Brown, 147 So.2d 452 (La.App. 2 Cir.1962)] case, reasoned that an act of misconduct committed in off-duty personal activity had no connection with the employment. This ratiocination is tenuous because it necessarily results in the conclusion that the act of misconduct must occur during working hours or in the course of the employment, whereas R.S. 23:1601(2) declares merely that the misconduct be connected with the employment. This, we think, is a phrase of broader scope-comprehensive enough to include any act of misconduct which renders the employee ineligible to perform the tasks of his employment, as in this case, or unable to report for work and perform the duties of his employment for any unseasonable length of time by reason of his confinement in jail,. . . . It will not do to say that, because an act of misconduct relates to the `private life' of the employee, it is essentially not connected with his employment for in these cases the question for determination must always be whether the result of the misconduct has adversely affected the employee's ability and capacity to perform his duties in an appreciable degree. If it has, then it follows that it is contrary to the employer's interest and in . . . disregard of standards of behavior which the employer has the right to expect of his employee. . . . Thus, by this criterion alone there is nexus.
There is an obvious connection between an arrest and absenteeism. The issue for this court is whether there was adequate misconduct by Tolliver. Grimble, supra.
Appellants' position is based upon the ALJ's decision which states:
The testimony and evidence in this case indicates the claimant was terminated from employment due to violation of company's attendance policy as a result of incarceration. The claimant was incarcerated and did violate the company's policy. However, the claimant was later exonerated when charges were dropped. It cannot be concluded that his discharge was for misconduct connected with the employment. He did not willfully violate any rule of the employer. The agency determination should not be upheld.
The City submitted a copy of its employee incarceration policy regarding attendance which provides:
1. Incarceration for any reason which causes an employee to be absent from work is an unexcused/unauthorized absence.
2. The employee shall notify his Division director of the facts and circumstances surrounding his/her incarceration within seventy two (72) hours of the occurrence.
3. Failure to notify your Division Director within seventy two (72) hours of the occurrence will result in your termination from the City's work force.
4. If you have accrued vacation time, tell your Division Director that you wish to use same while incarcerated, until it is exhausted.

*206 5. If the employee does not wish to take advantage of # 4 above, a five (5) day leave of absence without pay will be granted. At the end of this period termination will ensue.
6. If the employee does use the provision of # 4, a five (5) day leave of absence without pay will be granted after all vacation time has been exhausted. At the end of this period termination will ensue.
Judicial review by the district court in unemployment proceedings is limited by La. R.S. 23:1634(B), which states that "findings of the Board of Review as to the facts, if supported by sufficient evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law." Thus, judicial review in cases such as this one requires a determination of whether the facts are supported by competent evidence and whether the facts, as a matter of law, justify the action taken. Banks v. Administrator, Dept. of Employment Security of the State of Louisiana, 393 So.2d 696 (La.1981); Marchand v. Forster, 37,222 (La.App. 2d Cir.06/25/03), 850 So.2d 941.
The basic facts in the present case are not in dispute. Tolliver was absent from work for almost five months because he was arrested and jailed on charges which were ultimately not pursued by the prosecuting authority. Because he was unable to work, Tolliver's arrest impacted his job. Although the ALJ stated that Tolliver was "exonerated," there is nothing in this record indicating the reasons behind dismissal of the charges. Tolliver testified that he was arrested, had a bond hearing, and then was arraigned. Tolliver stated that the charges were dropped, but he offered no explanation of why they were dropped nor was any information presented about the incident(s) or action that led to his arrest.
The City had a policy addressing absences due to incarceration which allowed Tolliver to exhaust his vacation time and granted him an additional five days of leave without pay before any absences from work would be deemed unexcused. There is no dispute that this policy had been complied with by the City before it discharged Tolliver.
The trial court determined that Tolliver was disqualified from receiving unemployment benefits pursuant to La. R.S. 23:1601(2)(a), which defines disqualifying misconduct as "mismanagement of a position of employment by action or inaction, neglect that places in jeopardy the lives or property of others, dishonesty, wrongdoing, violation of a law, or violation of a policy or rule adopted to insure orderly work or the safety of others." (His emphasis).
In the instant case, the employer's rule is that an employee's absenteeism because of incarceration is inexcusable. La. R.S. 23:1601(2)(a) defines misconduct as an employee who violates a reasonable rule of his employer. This court has held that the legislative definition of misconduct in unemployment compensation matters requires either intentional wrongdoing or negligence to such an extent as to manifest culpability or a showing of intentional and substantial disregard of the employer's interest. Lafitte v. Rutherford House, Inc., 40,395 (La.App. 2d Cir.12/14/05), 917 So.2d 684; Wood v. Louisiana Dept. of Employment Security, 25,545 (La.App.2d Cir.02/23/94), 632 So.2d 899; Hardeman v. Blache, 605 So.2d 671 (La.App. 2d Cir. 1992).
We do not take issue with the district court's findings that: (1) the City was well within its rights to discharge the claimant due to his prolonged absence *207 from work; and (2) it would be unreasonable to require the City to hold the position open for the defendant indefinitely. However, the fact that the City's employment decision was legitimate, justifiable, and reasonable does not necessarily classify the conduct giving rise to the discharge as "misconduct" which would disqualify the employee from receiving unemployment benefits. The supreme court has held that an employee's behavior can be unsatisfactory to the employer without constituting disqualifying misconduct; an intent to do wrong must be present. Banks, supra.
While the record supports the fact that a violation of the City's employee policies occurred so as to justify Tolliver's termination, the record before us also supports the ALJ's findings that: (1) claimant was arrested on charges that were eventually dropped; (2) he was unable to post bond prior to his July 14, 2005, release; and (3) he advised the City of his circumstances. As noted previously, exactly what conduct or actions gave rise to probable cause for his arrest was not shown. Therefore, the evidence of the employee's conduct in regard to the circumstances leading to his termination does not indicate any intentional wrongdoing or negligence to such an extent as to manifest either culpability or a showing of intentional and substantial disregard of the employer's interest.
Because of the remedial purpose of unemployment compensation, the term "misconduct" should be construed to favor the awarding of benefits rather than disqualification. Wood, supra. Furthermore, in cases where the employer seeks to deny unemployment compensation benefits to an employee because of misconduct, the burden of proof as to such misconduct is upon the employer. Banks, supra. Whether Tolliver was in fact exonerated of the charges brought against him or if his actions amounted to misconduct of some lesser degree than charged is not evidenced from the record. However, because the City produced no evidence tending to suggest that Tolliver's arrest was a result of unacceptable conduct on his part, the record does not support the district court's finding of misconduct. This appears to be the rare case where an employer had good cause to discharge an employee but the record evidences no culpability on the part of the employee in bringing about that good cause.

Conclusion
For the foregoing reasons, the judgment of the trial court is reversed. Judgment is rendered directing the Board of Review, Office of Regulatory Services, State of Louisiana, to issue an order directing payment to plaintiff, Yancy Tolliver, of the unemployment compensation benefits to which he is entitled.
REVERSED AND RENDERED.
NOTES
[1] The last day Tolliver reported to work was February 24, 2005.