STEWART, J.
Appellants, City of Ruston (“city”) and Louisiana Workforce Commission (“commission”), are appealing the trial court’s judgment in favor of claimant, Christopher Williams (“Williams”). The trial court found that the Board of Review’s (“board”) determination that Williams was not entitled to benefits was not supported by facts established by sufficient evidence or applicable law, and reversed. The Appeals Tribunal’s (“tribunal”) decision was reinstated. For the reasons set forth in this opinion, we affirm the judgment of the trial court.
*32 FACTS AND PROCEDURAL HISTORY
Williams worked as a refuse disposal driver for the city from February 27, 2001 to June 6, 2013. In April 2011, Williams approached Ed Pittman (“Pittman”), the Assistant Director of Public Works in Ru-ston, and Lewis Love (“Love”), the Director of Public Works in Ruston, about allegations of an affair between his wife, Sandra Williams (“Sandra”), who was also working for the city of Ruston, and his supervisor, Dennis Woods (“Woods”). Woods was the Solid Waste Superintendent for the city. Williams demanded that Sandra and Woods be fired because of the alleged infidelity. Since there was no allegation of sexual activity taking place at work between Sandra and Woods, Pittman and Love informed Williams that they would not be fired.
The city gave Williams the option of transferring to another position with the same pay and more chances to advance, but he declined. Woods was removed as Williams’ supervisor, and Williams was instructed to report directly to Woods’ supervisor, Jeff Miller. Williams was allegedly | ¡Instructed not to have any contact with Woods or Sandra at work. In turn, Woods and Sandra were instructed not to have contact with Williams at work. Woods and Sandra were permitted to work together, but were instructed to limit their communications at work to work-related issues. These instructions were not put in writing.
On May 14, 2013, an argument took place in Sandra’s office involving Williams, Woods, and Sandra. Williams was suspended with pay on May 16, 2013, and his employment was terminated on June 6, 2013.[1] The separation notice stated that Williams was terminated because he “threatened physical violence against two co-workers after being instructed not to have contact with them.”
Williams subsequently filed for unemployment compensation benefits with the commission. The commission found that Williams was discharged from his employment because of fighting on duty, but it did not disqualify him, after determining his separation was not for misconduct connected with his employment. The city appealed this decision to the tribunal.
On August 21, 2013, a telephone hearing was conducted at the tribunal office. Pittman, Woods, Janice Turner (“Turner”), Jim Liner (“Liner”), and Christy Williams Perry (“Perry”) testified.
Pittman, who discharged Williams, testified that he was out of town when Williams committed the “threats of physical violence.” He further testified that Kevin McGivney and Pat Cargill initiated the investigation into the incident, and that he completed the investigation when he returned |3from out of town. Pittman also testified regarding the city’s policy, stating that the first offense of physical violence would result in the issuance of a written warning, or a two-day suspension or discharge. He admitted that Williams was never given any written reprimands or suspensions. He further testified that regarding the policy, “we try to stay close to it but we don’t follow it completely.” It was also noted that in Williams’ July 2011 performance review, there was no mention of the May 2011 incident.
Woods testified that the May 14, 2013, incident involved him, Sandra, and Williams in Sandra’s office. He stated that Williams “come (sic) over to me and started threatening me” that day, and that he did not do or say anything to Williams. Woods denied having any involvement with *33 Sandra. Woods reported the May 14, 2013, incident to Pittman via telephone.
Turner, who is also an employee of the city, testified that she was present during the May 14, 2013, argument. She stated that during the exchange between Williams and Sandra, Sandra pointed her finger at Williams. Williams told her to “get her finger out of his face before he slapped her down in front of that boyfriend.” At that point, Turner' testified that Woods stood up, and Williams told him that “he’d slap him down too.” Turner testified that she had never witnessed Williams behave in such a manner.
Liner testified that in June 2011, Williams’ garbage truck broke down. When Liner arrived at the scene, he told Williams that Woods was going to pick him up. Williams became upset, stating, “I want some of that” |4and “I wish he’d come get me.” Liner testified that he called Miller, and Miller sent someone else to pick Williams up. Liner reported the incident to his supervisor, Kevin McGivney, that same day. He testified that he had never witnessed Williams “act like that before.”
Perry, the daughter of Williams and Sandra, testified that on May 14, 2013, she contacted Sandra to discuss her wedding. Specifically, she informed Sandra and she did not want Woods to attend her wedding. After Sandra informed Perry that she would not honor her wishes, Perry contacted Williams to ask him to talk to Sandra about not bringing Woods to the wedding.
In the decision rendered on August 23, 2013, the tribunal determined that Williams was eligible for benefits, after finding that “while the employer may have been justified in discharging the claimant, the evidence and testimony in this case are insufficient to show the separation was for an act or acts which would constitute misconduct connected with employment.” The city appealed this decision to the board on September 6, 2013.
The board found the city proved legal misconduct and that Williams was not entitled to benefits pursuant to La. R.S. 23:1601(2). It reversed the tribunal’s decision that qualified Williams for benefits effective June 16, 2013. Williams appealed the board’s decision to the Third Judicial District Court in Lincoln Parish. The trial court found that the board’s decision was not supported by facts established by sufficient and competent evidence or Inapplicable law, and reversed it. The tribunal’s decision was reinstated. From this judgment, both the city and the commission appeal.
LAW AND DISCUSSION
On appeal, the city and the commission (hereinafter referred to as “the appellants” or “city” and/or “commission”) argue that the trial court erred in finding that the board’s decision was incorrect as a matter of law and not based on sufficient evidence. They both also argue that the trial court erred in finding that Williams’ act of threatening physical violence against Woods and Sandra, after being instructed not to have contact with them, did not constitute misconduct under La. R.S. 23:1601(2). The commission also assigns as error the trial court’s determination that the May 14, 2013, incident was unpremeditated, isolated and not a willful disregard of the employer’s interest. The city also argues that the trial court erred in not holding that Williams was disqualified from receiving unemployment benefits due to making false statements in obtaining benefits pursuant to La. R.S. 23:1601(8).
The controlling provision of unemployment compensation law is La. R.S. 23:1601, which states in pertinent part:
*34 An individual shall be disqualified for benefits:
(2)(a) If the administrator finds that he has been discharged by a base period or subsequent employer for misconduct connected with his employment. Misconduct means mismanagement of a position of employment by action or inaction, neglect that places in jeopardy the lives or property of others, dishonesty, •wrongdoing, violation of law, or violation of a policy or rule adopted to insure orderly work or the safety of others. ⅝ ⅜ ⅜: • ⅜ ⅜
|fi(8)(a) For the week, or fraction thereof, with respect to which he makes a false statement or representation knowing it to be false, or knowingly fails to disclose a material fact in obtaining or increasing benefits, whether or not he is successful in obtaining or increasing benefits, or otherwise due to his fraud receives any amount as benefits under this Chapter to which he was not entitled, for the remainder of the benefit year subsequent to the commission of the fraudulent act and continuing for the fifty-two Weeks which immediately follow the week in which such determination was made.
Judicial review in unemployment proceedings is limited by La. R.S. 23:1634, which provides that “findings of the Board of Review as to the facts, if supported by sufficient evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court (on appeal) shall be confined to questions of law.” La. R.S. 23:1634(B). Based on this statutory provision, the jurisprudence has defined judicial review in cases such as this one as requiring a determination of whether the facts are supported by competent evidence and whether the facts, as a matter of law, justify the action taken. Banks v. Administrator, Dept. of Employment Sec. of State of La., 393 So.2d 696 (La.1981); Lafitte v. Rutherford House, Inc., 40,395 (La.App.2d Cir.12/14/05), 917 So.2d 684; Marchand v. Forster, 37,222 (La.App.2d Cir.6/25/03), 850 So.2d 941. Judicial review does not permit the weighing of evidence, drawing of inferences, re-evaluation of evidence or substituting the views of this court for those of the Board of Review as to the correctness of the facts. Mar-chand, supra.
The employer bears the burden of proving by a preponderance of the evidence that the discharge resulted from disqualifying misconduct. Banks, supra; Dyer v. Nursecall Nursing & Rehabilitation/Irving Place Assoc., L.L.C., 47,927 (La.App.2d Cir.5/18/13), 135 So.3d 688; Brinson v. Administrator, Div. of Employment Sec., 34, 988 (La.App.2d Cir.8/22/01), 793 So.2d 552. The evidence supporting the factual findings must be legal and competent. Wood v. Louisiana Dept. of Employment Sec., 25,545 (La.App.2d Cir.2/23/94), 632 So.2d 899.
A violation of an employer’s rule does not per se constitute misconduct sufficient to disqualify a claimant from receiving unemployment benefits. For a claimant to be disqualified from benefits because of “misconduct connected with his employment” pursuant to La. R.S. 23:1601(2), the “misconduct” must have re-' suited from willful or wanton disregard of the employer’s interest, from a deliberate violation of the employer’s rules, or from a direct disregard of standards of behavior which the employer has the right to expect from his employees. Charbonnet v. Gerace, 457 So.2d 676 (La.1984); Gunn v. Gerace, 516 So.2d 1180 (La.App. 2d Cir.1987). The type of behavior which is considered “willful misconduct” is intentional wrong behavior. Charbonnet, supra; Banks, supra. Because of the remedial purpose of unemployment compensation, *35 the term “misconduct” should be construed so as to favor the awarding of benefits rather than disqualification. Lafitte, supra; Wood, supra. Whether a policy warrants withholding unemployment benefits is a question which must be determined not by examining the employer’s rule, but by applying the statute. Dyer, supra; Bowden, supra; Lafitte v. Reliant Energy Res. Corp., 37, 709 (La.App.2d Cir.10/17/03), 859 So.2d 233.
Based on the appellants’ assignments of error, we find that the main issue in this case is whether Williams’ actions constitute misconduct | ^pursuant to La. R.S. 23:1601(2)(a). As previously stated, the appellants assert that the trial court erroneously reversed the board’s determination that Williams was disqualified from receiving unemployment benefits pursuant to this statute. Williams argues that he did not engage in misconduct that would disqualify him from receiving unemployment compensation benefits. More specifically, he denies being told not to have contact with Sandra and Woods.
The City of Ruston Employee Handbook states that the first offense for “threatening, or intimidating others; acts or threats of violence or destruction of property” will result in a “written warning, a three to ten day suspension or discharge.” The second offense has the same result, while the third offense results in “discharge.” Pittman testified that Williams never received any written reprimands or suspensions. Pittman further testified regarding the city’s policy, stating “we try to stay close to it, but we don’t follow it completely.”
Even if Williams was instructed in April 2011, not to have contact with Sandra and Woods at work, the city did not put these instructions in writing. Further, though Liner reported the June 2011 incident to his supervisor, the city did not issue a warning, nor did it document the disparaging remarks that Williams allegedly made.
The record included Williams’ performance reviews from the city, spanning from January 2002 to July 2011. We note that in Williams’ July 2011 performance review, there was no mention of the incidents that occurred in April or June 2011. Pittman testified in the tribunal hearing that |8he “stood by everything in this performance review.” These reviews repeatedly stated that Williams “exceeded, job requirements,” with some reviews stating “Christopher continues to make significant contributions to the organization through his outstanding performance.” In fact, Williams had no disciplinary record during his employment at the city.
The trial court found that “the incident here was unpremeditated, isolated and not a willful disregard of the employer’s interest,” and “that the incident was one of poor judgment lacking sufficient grounds to deny benefits.” In its analysis regarding whether a claimant should be denied unemployment compensation benefits because of misconduct, the third circuit in Williams v. Brown, 157 So.2d 237 (La.App. 3d Cir.1963) cited Johnson v. Brown, La.App. 134 So.2d 388 (La.App. 3d Cir.1961), stating:
We may at the outset state that a single hotheaded incident cannot be considered the type of premeditated and seriously improper conduct which constitutes, within the meaning of the statute, the serious cause sufficient to deny unemployment compensation benefit to an employee. An employer has, of course, the legal right to discharge an employee without cause or for any cause; but such employee ordinarily is upon application entitled to unemployment compensation benefits when his terminated employment is covered by Louisiana Unemployment Compensation Law. La. R.S. *36 23:1471 et seq. These benefits are not paid primarily to reward the employee or to punish the employer, but rather to protect the stability of the state of the family.
There is no rigid rule that every employee gets one tantrum free. Just as a single incident need not absolve the employee a second incident need not condemn him. The showing necessarily depends on all the circumstances. Factors to be considered include whether the supervisor felt particularly threatened or undermined by the situation. Gunn v. Gerace, 516 So.2d 1180, (La.App. 2d Cir.1987), citing Jenkins v. Blache, 471 So.2d 909 (La.App. 2d Cir.1985).
After carefully reviewing the record and considering the factors surrounding Williams’ discharge, we find that the trial court did not err in its findings. The city did not fulfill its burden of showing miscondhct. After discovering that Sandra was having an affair with Woods in April 2011, Williams approached his supervisors demanding that the two be fired for the alleged infidelity. He then avoided any contact with Sandra and Williams for approximately two years, testifying at the tribunal telephone hearing that he stayed as far away from them as he could 'because he was “embarrassed and hurt.” On May 14, 2013, Perry contacted Williams to ask him, as her father, to talk to Sandra about not bringing Woods to her wedding. Williams clocked out at approximately 2:15 p.m., and went to talk to Sandra on Perry’s behalf. Sandra was in her office with Woods. The conversation erupted into an argument that involved Williams, Sandra and Woods. Perry testified that she spoke with Sandra after the incident, and that. Sandra did not appear fearful. Williams’ supervisor, Miller, was not present during the argument, and the evidence does not suggest that he felt particularly threatened or undermined by the situation. See-Gunn, supra.
We further find that Williams did not make false statements in obtaining benefits pursuant to La. R.S. 23:1601(8), as asserted by the city. An individual shall be disqualified for benefits if he makes a false statement or representation knowing it to be false, or knowingly fails to disclose a material fact in obtaining or increasing benefits. La. R.S. 23:1601(8)(a).
Williams denies making false statements in obtaining benefits. We note in his application for unemployment benefits, he does not refer to the May 14, 2013, incident, nor is there any mention of any conflict between him, Sandra, and Woods. Though he admitted at the tribunal hearing that he had threatened to slap Woods and Sandra, he also made the following statement at the conclusion of the hearing:
Yes sir. I had, I had every intention to come in here and tell a lie. But I talked to a lawyer, she said tell the truth and I had to pray about it. Then my daughter cried, she said daddy tell the truth, I said which is going to hurt me. I need my unemployment. My son said tell the truth. I had a close friend of mine, a prayer, a prayer woman say tell the truth. Whatever the outcome becomes be, let it be but tell the truth but I came in and I told the truth. I could have lied just like they did. But I told the truth. I chose to tell the truth instead of a lie. Thank you sir.
La. R.S. 23:1601(8)(a) does not disqualify an individual for having the intent to tell a lie. Further, the record does not contain evidence indicating Williams admitted he lied.
Based on the facts and evidence presented, we find that the city failed to satisfy its burden of proving that Williams’ discharge resulted from disqualifying misconduct. *37 Williams’ unwise decision to clock out from work and participate in an argument with Sandra in her office gave the city the right to discharge him, but is insufficient grounds to deny benefits. Therefore, Williams is entitled to unemployment compensation benefits for which he makes claim.
CONCLUSION
For the foregoing reasons, the district court’s judgment reversing the board’s decision is affirmed. We assess court costs in the amount of $2,096.64, to be split equally between the Louisiana Workforce Commission and the City of Ruston.
AFFIRMED.

. Sandra was also terminated.